**UNITED STATES of America**

v.

**Lenwood L. WHITE.**

**No. CR 84–AR–104–NE.**

United States District Court,
N.D. Alabama.

Sept. 18, 1986.

See also, 646 F.Supp. 1543.

Frank W. Donaldson, U.S. Atty., Bill Barnett, Asst. U.S. Atty., Craig Shaffer, Barbara Kammerman, Albert Moskowitz, U.S. Dept. of Justice, Wm. Bradford Reynolds, Asst. Atty. Gen., Dept. of Justice, Washington, D.C., Ann Robertson, Sp. Asst. U.S. Atty., Birmingham, Ala., for U.S.

Bryce Graham, Tuscumbia, Ala., for White.

## MEMORANDUM OPINION

ACKER, District Judge.

The court conducted an evidentiary hearing on the motion of defendant Lenwood L. White to suppress the deposition which he gave on July 19, 1983, in CV 80–HM–1449–S. White's motion, referred to under headings numbered (1) and (2) in the Memorandum Opinion of July 14, 1986, the same enumeration used in the order of September 8, 1986, entered in the severed case, *United States v. Tucker*, clearly contained two separate thrusts. One aspect attacks the deposition on the basis that it was the product of an unholy liason between the Southern Christian Leadership Conference and the Government in that the "sole purpose" of Mr. Dees in filing CV 80–HM–1449–S was to obtain information for a criminal prosecution. The other aspect objects to the introduction of the deposition simply as a violation of White's constitutional privilege against self-incrimination. While perhaps interconnected these avenues of attack are separate and distinct.

### The "Sole Purpose" of CV 80–HM–1449–S

The only issue the Eleventh Circuit addressed in *United States v. Handley*, 763 F.2d 1401 (11th Cir.1985) was the attribution of Mr. Dees' discovery activities to the Government. When on July 14, 1986, this court overruled all motions to suppress the civil depositions (including White's motion) it was only because of a residual reluctance

by this court at that time to find that Mr. Dees' "sole purpose" was to obtain information for a criminal prosecution. The court applied the "law of the case" doctrine based on the finding by the Eleventh Circuit on the evidence it then had that Mr. Dees' "sole purpose" was not to obtain such information. It has now been pointed out to the court that the "law of the case" cannot apply to White who presented no motion to suppress prior to the appeal by the United States which led to the opinion in *United States v. Handley.* White was not a party to that appeal and could not have been heard on it, except perhaps as *amicus curiae,* under the pleadings and orders as they then existed. If the court is incorrect and the "law of the case" does apply to White because he was and is an alleged co-conspirator and was a party defendant at the time of the opinion of the Eleventh Circuit, the court does not retreat from its findings of July 14, 1986, in the total case and of September 8, 1986, in *United States v. Tucker,* based on evidence which came to light after the former appeal and which now satisfies the court that Mr. Dees' "sole purpose" *was* to obtain information for a criminal prosecution. The court herein adopts its findings of fact in the *Tucker* opinion of September 8, 1986, its findings of fact in the opinion of July 14, 1986, and its findings of particular fact (as opposed to ultimate fact inasmuch as the Eleventh Circuit disagreed with this court's conclusion of ultimate fact on the evidence then appearing) in the opinion of July 27, 1984.

■ If the United States had not announced that it will not offer Tucker's civil depositions against Tucker, the court would have suppressed those depositions as being the product of Mr. Dees' "sole purpose" now clearly appearing by virtue of "substantially different evidence" coming to light after the former appeal. *Leggett v. Badger,* 798 F.2d 1387 (11th Cir.1986), contains the latest reiteration by the Eleventh Circuit of the exceptions to the "law of the case" previously discussed on July 14, 1986, and September 8, 1986. *Leggett,* however, does not speak to the question of

how to apply the "law of the case" to multiple party cases in which some of the parties did not participate at the trial level or at the appellate level in the creation of a judicial expression certainly binding on those litigants who did participate. Whether or not White is bound by the doctrine, he comes within one or more of its exceptions.

The court on July 14, 1986, and on September 8, 1986, evaluated substantial evidence of Mr. Dees' intentions not available at the time the Eleventh Circuit spoke on the question of Mr. Dees' intention. In the opinion of September 8, 1986, this court did not quote Tucker precisely. Here is exactly what Tucker said less than two weeks ago, without any contradicting testimony being offered by the United States:

"If you will tell us what we want to know", he [Mr. Dees] said, "I will see what I can do to get the Justice Department not to indict you". I said, "Indict me for what?" I said, "I haven't done anything. They can't indict me". And he just laughed and said, "There is going to be some indictments over this."

When the Government's counsel, long after *United States v. Handley* was decided, for the very first time represented to this court that not a single deposition taken in CV 80–HM–1449–S was ever presented to the grand jury, the court better understood why the Government was unwilling to base its contention that "probable cause" of a crime existed on such depositions. Inasmuch as the quality of evidence required for a grand jury presentation is less substantial than evidence for a petit jury presentation, why should evidence unworthy of grand jury presentation suddenly be worthy to prove guilt "beyond a reasonable doubt"?

■ After *United States v. Handley,* the Eleventh Circuit decided *United States v. Tison,* 780 F.2d 1569 (11th Cir.1986). There the Eleventh Circuit says:

The Fifth Circuit Court of Appeals noted this conflict in the Federal Civil and Criminal Procedures, prior to the enactment of section 1514:

A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit. Judicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other.

*Campbell v. Eastland,* 307 F.2d 478, 487 (5th Cir.1962), *cert. denied,* 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963).

The issues boil down to whether the timing of a lawsuit can deprive it of a legitimate purpose, even though in the long run it could serve such a purpose if delayed.

*Id.* at 1572.

While *Tison* was dealing with a civil suit used by a criminally accused to obtain discovery, what is sauce for a criminal defendant is sauce for the prosecution. This idea is expressed less tritely by the Eleventh Circuit in *Tison* as follows:

> Similarly, it is improper for the Government to institute a civil action to generate discovery for a criminal case.

*Id.* at 1573.

*Tison* only lifts up the proposition, clearly acknowledged by the Eleventh Circuit in *United States v. Handley,* that the Government cannot use discovery in a civil case, even through an eager but single minded third party, to develop evidence against a prospective criminal target. This proposition has nothing to do with the "voluntariness" of that target's responses to civil discovery requests. If CV 80–HM–1449–S was filed by Mr. Dees in order "to avoid the restrictions on criminal discovery" the products of that civil discovery are unavailable in any subsequent prosecution, whether the products were "voluntary" or not. In light of the new and substantial evidence the court concludes that Mr. Dees' "sole purpose" for taking depositions in CV 80–HM–1449–S was to push for Justice Department action.

■ During White's suppression hearing he invoked all evidence offered and received in all prior suppression hearings in the total case. The United States objected to the court's consideration of any evidence except that elicited at White's suppression hearing. Because in all prior suppression hearings the United States has been represented by counsel and has had an opportunity to confront all witnesses and to object ·to all evidence, the court, in its discretion, has considered all prior suppression evidence previously received, as well as the evidence received at White's suppression hearing.

At White's suppression hearing, the most interesting and provocative piece of evidence not previously revealed is that at the time White's civil deposition was taken on July 19, 1983, the federal criminal investigation had been reopened and was again in full swing. This necessarily was the result of Mr. Dees' feeding of his earlier civil depositions to the Department of Justice. The only other testimony at White's suppression hearing bearing on the "purpose" of the civil suit is the uncontradicted testimony of White himself to the effect that Mr. Williams, one of Mr. Dees' investigators, told White that "if you will cooperate we will go light on you". This is, of course, consistent with and corroborative of Tucker's earlier testimony.

### *The Admissibility of White's Deposition Over A Claim of Fifth Amendment Privilege*

White's alternative objection to the admissibility of his civil deposition taken in CV 80–HM–1449–S is that it was not knowingly and voluntarily given and not accompanied by any waiver of his Fifth Amendment privilege.

■ The circumstances surrounding White's deposition are quite different from the circumstances surrounding Tucker's depositions and surrounding Tucker's testimony given in *State v. Robinson.* White

was not a defendant in CV 80–HM–1449–S when he was deposed on July 19, 1983. He was not made a defendant until thereafter, and he was totally unaware of Judge Haltom's strong order of February 8, 1983. He could not have been intimidated by what he did not know about. The fact that Mr. Dees may have raised his voice during White's deposition is certainly not enough to constitute duress. Even though White only had an eighth grade education and was naive in the area of litigation, he had a lawyer present during his deposition, and he was not threatened in any way. In fact, his lawyer performed very well on his behalf by expressly preserving all objections except as to form or leading questions. The formal stipulation negotiated by and between Mr. Carmichael, Mr. White's lawyer, and Mr. Dees, lawyer for the Peoples' Association, and entered into before the first question was asked by Mr. Dees, provided:

> IT IS FURTHER STIPULATED AND AGREED that it shall not be necessary for any objections to be made by counsel to any questions, except as for form or leading questions, and that counsel for the parties may make objections and assign grounds at the time of the trial, or *at the time said deposition is offered in evidence, or prior thereto.*
>
> \* \* \* \* \* \*
>
> I, Kathy B. Haynes, a Court Reporter of Decatur, Alabama, acting as Commissioner, certify that on this date, as provided by the Federal Rules of Civil Procedure, *and the foregoing stipulation of counsel,* there came before me at the law library of the Colbert County Courthouse, Tuscumbia, Alabama, beginning on or about 9:20 A.M. Lenwood L. White, witness in the above styled cause, for oral examination . . .

(emphasis supplied).

This language is both understandable and unequivocal. It says what it means and means what it says. There was absolutely no reason for, or requirement that, Mr. Carmichael interpose an objection invoking the Fifth Amendment in response to any question put to White by Mr. Dees. The fact that Mr. Carmichael never interposed such an objection was entirely consistent with the stipulation. White's objection on Fifth Amendment grounds is *now* being interposed. Such a procedure was formally contemplated on July 19, 1983. It would, of course, be interesting to speculate what Mr. Dees' reaction would have been on July 19, 1983, if Mr. Carmichael had, after entering into this clear stipulation, nevertheless invoked the Fifth Amendment and advised White not to answer any questions. Would Mr. Dees then have pulled out Judge Haltom's order of February 8, 1983 and waved it? This question need not be answered because Mr. Carmichael had no reason to give his client any such advice under the circumstances.

■ The practice of reserving objections except as to form until a deposition is actually offered into evidence is both an ancient and a practical one, sanctioned by federal procedure. In *Jordan v. Medley,* 711 F.2d 211 (D.C.Cir.1983), Judge Scalia, speaking for the District of Columbia Circuit, overruled the lower court's conclusion that a witness who does not object to testimony taken at deposition waives his right to object at trial. Judge Scalia noted that Rule 32, F.R.Civ.P. is in perfect harmony with this procedure. The following is a simple statement of the same procedure found in *Falk v. United States,* 53 F.R.D. 113 (D.Conn.1971):

> Answers obtained by deposition are not automatically entered into evidence at trial. Objections to such admission may be entered at the taking of the deposition *or reserved until time of trial.*

*Id.* at 115 (emphasis supplied).

Under these well recognized procedures the objection now being interposed by White that questions put to him by Mr. Dees on July 19, 1983, may tend to incriminate him, are timely and must be sustained as to those questions which tend to elicit, whether by design or by accident, incriminating information from White at his criminal trial. When the stipulation negotiated between Mr. Carmichael and Mr. Dees said

that "counsel may make objections and assign grounds ... *at the time said deposition is offered into evidence or prior thereto", now* is the time, because the United States is now preparing to offer it into evidence.

Pursuant to a literal reading of the stipulation of July 19, 1983, the United States arguably might be allowed to submit each deposition question put to White on July 19, 1983, the court then entertain an objection from White raising the Fifth Amendment, and the United States obtain a ruling in front of the jury. This, however, is a wasteful and illogical mode of handling the question in view of the fact that both parties have requested an advance ruling from the court, and the vast majority of White's answers contained in the deposition of July 19, 1983, are self-incriminating under the allegations of this indictment.

*The Meaning And Intent Of The Eleventh Circuit As To White's Deposition*

In *United States v. Handley* the Eleventh Circuit said:

> Of the nine defendants, neither Mason or White filed a motion to suppress his deposition. The record fails to show that Kelso and Creekmore were deposed in the civil action. *Only Handley, Steele, Riccio, Tucker and Godfrey, therefore, may object to the admission of their respective depositions.*

763 F.2d at 1405 (emphasis supplied).

This court does not believe that the Eleventh Circuit could have intended forever to preclude White from objecting to the admission of his civil deposition in this case no matter what the circumstances. This court finds no Federal Rule of Criminal Procedure, and no decided case, which prevents a trial court from permitting the filing of motions and from considering those motions on their merits after an interim appeal by the Government. This is doubly true when new facts bearing on the very issue being raised have come to light since the appeal. If this court is correct in its interpretation of the deposition stipulation entered on July 19, 1983, there was no

reason for White to file a motion to suppress. He could have waited until jeopardy attached and then objected when the first deposition question was read before the jury. The fact that he chose to file a motion to suppress shortly before trial should not be a cause for criticism but for thanksgiving.

A separate order will be entered.

## ORDER

In accordance with the accompanying Memorandum Opinion, the motion of Lenwood L. White to suppress his deposition given in CV 80–HM–1449–S is GRANTED, and the Order of July 14, 1986, insofar as it denied said motion, is SET ASIDE and VACATED.