**UNITED STATES of America,**

v.

**Terry Joe TUCKER, David Lee Kelso, Roger David Handley.**

**No. CR 84–AR–104–NE.**

United States District Court, N.D. Alabama.

Nov. 7, 1986.

See also, 643 F.Supp. 1067, 646 F.Supp. 843.

Frank W. Donaldson, U.S. Atty., Bill L. Barnett, Asst. U.S. Atty., Craig Shaffer, Barbara Kammerman, U.S. Dept. of Justice, for U.S.

Robert P. Bynon, Jr., Birmingham, Ala., Thomas J. Spina, Bham, Ala., for Terry Joe Tucker.

John Sudderth, Ann C. Robertson, Special Asst. U.S. Atty., Birmingham, Ala., for Roger David Handley.

George C. Lucas, Birmingham, Ala., for David Lee Kelso.

**MEMORANDUM OPINION**

ACKER, District Judge.

On October 22, 1986, this court entered an order requiring the United States to show cause why this case as against Terry Joe Tucker should not promptly be reset for trial and why the case as against David Lee Kelso and Roger David Handley

should not proceed to trial according to the present schedule despite three separate interlocutory appeals by the United States from the recent orders suppressing certain self-incriminatory statements. On October 30, 1986, the United States responded to this show cause order. Its response has satisfied the court that the cases against Tucker and Handley should be stayed pending the Government's appeals although no continuance has been requested. The Government has not convinced the court that the Kelso case should be stayed. To the contrary Kelso has convinced the court that the Government should be required to go to trial without the suppressed evidence. The court will set forth its reasons for reaching these conclusions.

## TUCKER

■ The transcript of Tucker's testimony in *State v. Robinson* was not acquired by the prosecution until mid–1985, which was *after* the 1984 suppression hearing. While the Government should have delivered the transcript to Tucker's counsel much sooner than it did pursuant to its continuing obligations under Rule 16, F.R. Cr.P., the Government is not the cause of Tucker's inability to have moved for suppression of this testimony at the 1984 suppression hearing. In other words it is not entirely the Government's fault that the issue of the admissibility of Tucker's testimony in *State v. Robinson* was not included within the Government's 1984 appeal. In his brief Tucker comes close to convincing the court that Rule 16 F.R.Cr.P. was violated by the United States in 1984 when it did not furnish Tucker's testimony at a time it *should* have known of its existence. Tucker correctly cites *United States v. Jensen*, 608 F.2d 1349 (10th Cir.1979), for the proposition that there is a duty under Rule 16 on the Government to search for other "investigations of the defendant, in addition to its own files", and compellingly argues that Mr. Dees is in this case among those "other investigators" who should have been asked about the prior Tucker testimony before the 1984 suppression hearing, particularly when this court has

recognized a close connection between Mr. Dees and the Government. As persuasive as this argument is, this court concludes that it was Mr. Dees' overreaching and not his shortcoming as a supplier of information which is attributable to the Government. It was Mr. Dees who aggressively became the avenger. If he failed to give the Government Tucker's testimony in *State v. Robinson* until 1985 after Tucker's depositions in CV 80–HM–1449–S were in jeopardy, it was not the Government's fault. Therefore, under the overall circumstances the United States should not be denied its right for a pretrial appellate determination of the correctness of this court's recent suppression order, even though that review will cause another trial delay and interfere with Tucker's right to a speedy trial.

## HANDLEY

■ As to Handley's deposition in *Reed v. Handley*, it was delivered by the Government to Handley's counsel *prior* to the 1984 suppression hearing and could have been a subject of Handley's suppression motion filed at that time. Handley did not raise the issue. While it is true that the entire emphasis in 1984 was on Handley's deposition in the Southern Poverty Law Center's civil action, CV 80–HM–1449–S, leading Handley to believe that the United States did not intend to offer his deposition in *Reed v. Handley*, Handley perhaps should have anticipated the worst. Therefore, the court will not honor Handley's complaint of trial delay while the Government proceeds to ascertain in the Eleventh Circuit in advance of trial the admissibility here of Handley's testimony in *Reed v. Handley*. The court would, of course, have preferred that the Government play its cards face up much earlier on this subject, but the court finds that the sanction of requiring an immediate trial of Handley would be too severe, particularly inasmuch as Handley's civil deposition in CV 80–HM–1449–S has again been suppressed based on the new evidence received after the opinion

of the Eleventh Circuit, and an appeal on that question is certainly legitimate.

## KELSO

Kelso's deposition in *Kelso v. Robinson*, CV 79–429, taken in 1979 in the Circuit Court of Morgan County, Alabama, involves a situation entirely different from the situations involving the suppression of Tucker's and Handley's former testimony. On October 17, 1986, this court, for the first time, suppressed this deposition, which had been taken in 1979. *United States v. Mason*, 646 F.Supp. 843 (N.D.Ala. 1986). Kelso's case had long been set for trial and is still set for trial.

Kelso's deposition in *Kelso v. Robinson* was in the actual possession of the Government prior to the 1984 suppression hearing, but in clear violation of Rule 16, F.R.Cr.P., and in clear violation of the magistrate's directives, it was not produced to Kelso's counsel until October 2, 1986. This lengthy failure to produce was the major reason for this court's recent order of suppression. The court there emphasized the prophylactic purpose of Rule 16. Not even knowing of the existence of this deposition in 1984, Kelso's counsel could not have moved to suppress it prior to the appeal taken by the Government from the suppressions of 1984 which resulted in *United States v. Handley*, 763 F.2d 1401 (11th Cir.1985), in which the Eleventh Circuit appropriately pointed out that no civil deposition of Kelso was involved in the suppression order there under review. 763 F.2d at 1405.

In its order of October 22, 1986, requiring the United States to demonstrate that an appeal from the order suppressing Kelso's deposition would not unfairly delay the trial this court said:

> The delay occasioned by the former appeal was understandable. The new delay being occasioned by ... the ... appeal[ ] which involve[s] the suppression of materials not addressed earlier by this court through no fault of defendant[ ] ... Kelso ... is less understandable. The court has already made known its concerns over the possible implication of the

Speedy Trial Act, and of the constitutional right to a speedy trial.

The Court of Appeals for the Ninth Circuit recently said:

> The government has a conditional right to appeal a suppression order, but the exercise of this right may result in a disruptive effect on the criminal trial process, therefore harboring a potential for abuse. As a result, the government's right to appeal pretrial suppression orders must be balanced with a defendant's right to proceed to trial on the indictment. This can best be accomplished, as we stated in [*U.S. v.*] *Emens* [565 F.2d 1142 (9th Cir.1977)], by retaining jurisdiction in the district court to dismiss the indictment in appropriate cases.
>
> In protecting its right to appeal, the government may request the district court to stay proceedings pending appeal and, if refused, pursue the issue with this court. If the indictment is dismissed, as in this case, we review the district court's order based upon whether there was an abuse of discretion. *Cf. United States v. Griffin*, 617 F.2d 1342, 1347 (9th Cir.), *cert. denied*, 449 U.S. 863, 101 S.Ct. 167, 66 L.Ed.2d 80 (1980).
>
> \* \* \* \* \* \*
>
> ... the district court must exercise this authority "with caution," especially in dismissing a case with prejudice, and it may dismiss with prejudice "only after a forewarning to the prosecution that dismissal with prejudice will result from a failure to proceed to trial." [citations omitted].

*United States v. Gatto*, 763 F.2d 1040, 1050 (9th Cir.1985).

On October 31, 1986, the United States filed its notice of appeal from the order suppressing Kelso's deposition in *Kelso v. Robinson*, even though Kelso's testimony in *State v. Robinson* had not been suppressed. On November 4, 1986, Kelso filed a motion insisting upon his constitutional right to a speedy trial under the Sixth

Amendment and to his statutory rights under the Speedy Trial Act and demanding that his case proceed to trial following the trial of his co-defendant Ricky Lynn Creekmore, a trial which is now in progress.

This indictment was returned on May 17, 1984, nearly two and one-half years ago. As far as this record reflects Kelso is not in any way responsible for the lengthy trial delay. Neither is Kelso responsible for the fact that the ruling on his recent motion to suppress his 1979 deposition was not entered by the court until at the last minute before an already delayed trial. Kelso could not have made his motion sooner unless the court should have expected him to be smarter than his own counsel and to make his own judgments as to what was and was not important to his defense.

In its response of October 30, 1986, the United States argues, *inter alia:*

Clearly ... the requisite preconditions for the Government's right to appeal under § 3731 have been satisfied. Nevertheless, this Court, on October 22, 1986, issued an order indicating an intent to dismiss the indictment against three of the defendants unless the Government abandons its appellate remedies and proceeds to trial against those three defendants. As a legal basis for this Order, the Court cites to no precedent from the Eleventh or Fifth Circuits. Indeed, a search of the case law from those circuits reveals no authority on point. Rather, the court relies on a Ninth Circuit decision, *United States v. Gatto*, 763 F.2d 1040 (9th Cir.1985), for the proposition that a district court retains jurisdiction to dismiss with prejudice an indictment upon an interlocutory appeal taken by the Government pursuant to 18 U.S.C. § 3731.

It is far from certain that this Ninth Circuit case upon which the court so heavily relies states the law in this jurisdiction. At best *Gatto* is persuasive, but not binding authority in the Eleventh Circuit.

\* \* \* \* \* \*

The course of action now proposed by this court in its latest Order is not sanctioned by precedent in this Circuit, nor is it an appropriate response under Ninth Circuit authority. For even under that case law, the remedy is a radical one to be used only in rare circumstances. The facts in this case do not justify such extreme action which has the effect of depriving the Government of its right to appeal suppression decisions.

\* \* \* \* \* \*

The Government is always hopeful that this Court would reconsider its finding of bad faith in the Government's alleged failure to turn over the Kelso deposition. But even if the Court persists in its finding that "bad faith" sufficient for a Rule 16 prophylactic order has occurred, the Government submits that using that same finding to order dismissal with prejudice of the entire prosecution against Kelso because of the delay occasioned by a Government appeal is a draconian measure wholly unwarranted under the circumstances.

\* \* \* \* \* \*

The appeals taken by the Government here concern evidentiary questions which bear upon the Government's ability to go forward with the prosecution of this case.

Under the particular and peculiar circumstances of Kelso's case the court does not believe that the United States has an absolute right to appeal the suppression of Kelso's deposition while obtaining a continuance of the case over Kelso's objection. The United States is, of course, correct in pointing out that *Gatto* does not necessarily represent the law of the Eleventh Circuit, but this court believes that the principles enunciated in *Gatto* are correct and compelling constitutional principles. The Government in its response to the show cause order says it can find no apt expression from the Fifth or the Eleventh Circuits. The Government's research obviously did not reveal the *en banc* opinion of the Fifth Circuit in *United States v. Dunbar*, 611 F.2d 985 (5th Cir.1980), which holds:

Historically, the filing of a notice of appeal has generally given the appellate

court sole jurisdiction and divested the trial court of jurisdiction to proceed with the case. *See Kirtland v. J. Ray McDermott & Co.,* 568 F.2d 1166 (5th Cir.1978); *Bush v. United Benefit Life Insurance Co.,* 311 F.2d 893 (5th Cir.1963).

We recently held, however, in *United States v. Hitchmon,* 602 F.2d 689, 691 (5th Cir.1979) (*en banc*), that "the notice of appeal from a nonappealable order does not render void for lack of jurisdiction acts of the trial court taken in the interval between the filing of the notice and the dismissal of the appeal...." The Government had filed a notice of appeal but could not properly appeal the trial court's grant of a new trial motion. *United States v. Alberti,* 568 F.2d 617, 621 (2d Cir.1977); 18 U.S.C.A. § 3731; *see Wiggs v. Courshon,* 485 F.2d 1281, 1282 (5th Cir.1973). We declined to reverse convictions rendered in a trial conducted during the pendency of the appeal. *Hitchmon* brought this Circuit in line with the First, Eighth, Ninth and Tenth Circuits on this issue. *Hodgson v. Mahoney,* 460 F.2d 326 (1st Cir.), *cert. denied,* 409 U.S. 1039, 93 S.Ct. 519, 34 L.Ed.2d 488 (1972); *Riddle v. Hudgins,* 58 F. 490 (8th Cir.1893); *Ruby v. Secretary of U.S. Navy,* 365 F.2d 385 (9th Cir.1966), *cert. denied,* 386 U.S. 1011, 87 S.Ct. 1358, 18 L.Ed.2d 442 (1967); *Euziere v. United States,* 266 F.2d 88 (10th Cir.1959), *vacated on other grounds,* 364 U.S. 282, 80 S.Ct. 1615, 4 L.Ed.2d 1720 (1960).

\* \* \* \* \* \*

Thus the issue is whether the district court had jurisdiction to proceed with Dunbar's trial while his appeal of the court's denial of his frivolous double jeopardy motion was pending before this Court. Prior to the *en banc* decision in *Hitchmon,* the issue would have been resolved by the principle that a notice of appeal automaticaly divests the trial court of jurisdiction. *See Kirtland v. J. Ray McDermott & Co.,* 568 F.2d at 1169–70; *Bush v. United Benefit Life Insurance Co.,* 311 F.2d at 894. That principle was rejected, however, in *Hitchmon,* which indicated by its approach

that "a decision as to whether jurisdiction exists in a trial or appellate court, or both, can be the product of reasoned choice." *United States v. Hitchmon,* 587 F.2d 1357, 1362–63 (5th Cir.1979) (panel opinion) (Higginbotham, J., concurring); *see Hitchmon,* 602 F.2d at 694.

The need for such a "reasoned choice" is before us in the present case. On one hand, the Court must recognize that the failure to review a colorable double jeopardy claim before trial begins creates a substantial risk that the accused's constitutional rights will be infringed. On the other hand, we must weigh the concern expressed in *Hitchmon,* that *the divestiture of jurisdiction rule* leaves the court powerless to prevent intentional dilatory tactics, *forecloses without remedy the nonappealing party's right to continuing trial court jurisdiction, and inhibits the smooth and efficient functioning of the judicial process.* 602 F.2d at 694.

\* \* \* \* \* \*

The requirement of a written finding will enable this Court to review as expeditiously as possible a defendant's appeal and any request for relief from a district court's determination that an appeal is frivolous and does not deprive the court of jurisdiction to proceed. *See United States v. Barham,* 608 F.2d 602 (5th Cir.1979) (expedited consideration of appeal from denial of double jeopardy motion). This Court is, of course, empowered to protect the defendant's double jeopardy rights by staying proceedings below pending appeal, F.R.A.P. 8, or by issuing a writ of mandamus or prohibition, 28 U.S.C.A. § 1651.

611 F.2d at 987, 988, 989 (emphasis supplied).

In *Dunbar* the old Fifth Circuit, and therefore the Eleventh Circuit, place limitations on either party's right to a stay pending its interlocutory appeal in a criminal case. *Dunbar* says that it places the Fifth Circuit "in line with the Ninth Circuit." 611 F.2d at 987. Perhaps the Fifth Circuit anticipated the Ninth Circuit's *Gatto.* The same principle logically applies to the prosecution's asserted right of appeal as to the

**1548**

defendant's right, particularly where, as in this case, the trial of Kelso's alleged co-conspirator, Creekmore, is now proceeding despite the non-existence of any prior self-incriminating testimony by Creekmore for use as evidence by the Government.

A very recent expression by the Supreme Court on the issue of the Sixth Amendment's limitation on trial delay caused by interim procedural maneuverings by the parties comes from *United States v. Loud Hawk*, — U.S. —, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986). In *Loud Hawk* four Justices dissented. These four would hold the Government to a very strict speedy trial standard when the Government takes a pre-trial or interim appeal or obtains a continuance so as to delay final disposition of the charge. The dissenters also would recognize the applicability of the Speedy Trial Clause to anyone "accused" whether or not he is actually under indictment. Here, of course, Kelso has been under indictment since May 17, 1984, so that the issue of delay from the time of the "accusation" is not before this court. In Justice Powell's opinion for the majority, he states as follows the question with which the Court was there faced:

> In this case we must decide, first, whether the Speedy Trial Clause of the Sixth Amendment applies to time during which respondents were *neither under indictment* nor subjected to any official restraint, and, second, *whether certain delays occasioned by interlocutory appeals were properly weighed in assessing respondents' right to a speedy trial.*

106 S.Ct. 650 (emphasis supplied) (footnote omitted).

The Supreme Court answered these questions with the following holdings:

> We conclude that the time that no indictment was outstanding against respondents should not weigh towards respondents' speedy trial claims. *We also find that in this case the delay attributable to interlocutory appeals by the Government and respondents do not establish a violation of the Speedy Trial Clause.*

106 S.Ct. 650–651 (emphasis supplied).

\* \* \* \* \* \*

The Court has found that *when no indictment is outstanding,* only the "*actual* restraints imposed by arrest and holding to answer a criminal charge ... engage the particular protections of the speedy trial provision of the Sixth Amendment." *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971) (emphasis added); see [*U.S. v.*] *MacDonald, supra,* 456 U.S. [1], at 9, 102 S.Ct. [1497], at 1502 [71 L.Ed.2d 696 (1982)]. As we stated in *MacDonald:* "The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges."

106 S.Ct. at 654 (emphasis in original and supplied) (citation omitted).

\* \* \* \* \* \*

It is, of course, true that *the interests served by appellate review may sometimes stand in opposition to the right to a speedy trial.*

106 S.Ct. at 655 (emphasis supplied).

\* \* \* \* \* \*

Given the important public interests in appellate review, *supra,* at 655, it hardly need be said that an interlocutory appeal by the Government ordinarily is a valid reason that justifies delay. In assessing the purpose and reasonableness of such an appeal, courts may consider several factors. These include *the strength of the Government's position on on the appealed issue, the importance of the issue in the posture of the case,* and—in some cases—the seriousness of the crime.

106 S.Ct. at 656 (emphasis supplied).

\* \* \* \* \* \*

A defendant with a meritorious appeal would bear the heavy burden of showing an unreasonable delay caused by the prosecution in that appeal, or a wholly

unjustifiable delay by the appellate court. A *defendant* who resorts to an interlocutory appeal normally should not be able upon return to the district court to reap the reward of dismissal for failure to receive a speedy trial.

106 S.Ct. at 657 (emphasis supplied).

In *Loud Hawk* the defendants themselves had sought and obtained continuances and had themselves mounted an interlocutory appeal or appeals. If the facts and procedural posture in Kelso's case had been presented to the Supreme Court instead of the facts and procedural posture presented in Loud Hawk's case, and if the Government had refused to prosecute because of a pending appeal from a suppression ruling, and if the trial court had thereupon dismissed the indictment, the result in the Supreme Court would, in this court's opinion, have been different. The dissenters would, under such altered circumstances, surely have found one or more of their fellow Justices willing to join them in affirming the trial court on speedy trial grounds.

This court does not pass upon the question of the meaning and intent of 18 U.S.C. § 3731 as to whether or not the Government can ever take successive interlocutory appeals from successive orders of suppression. The statute may be susceptible to such an interpretation, but the court neither decides nor relies upon any such interpretation.

■ Following the admonition of *Gatto*, this court carefully forewarned the United States of the possibility of requiring it to proceed to trial against Kelso despite an interlocutory appeal by the United States taken over Kelso's objection. Even though the Government's current appeal may not be entirely frivolous, the court finds on the facts before it that the United States has failed to show a compelling or satisfactory reason why the trial of Kelso should not proceed as scheduled immediately following the trial of Creekmore. The court disagrees with the United States Attorney's certificate on the notice of appeal and believes, instead, that Kelso's deposition in *Kelso v. Robinson* is more like "frosting on the prosecution's cake" than evidence crucial to the prosecution's case.

Kelso's counsel, totally surprised on October 2, 1986, to learn of his client's 1979 civil deposition, could have stood dumb and then proceeded to trial without immediately thereupon moving orally for suppression without having any opportunity to prepare for a suppression hearing. If he had not reacted as he did in consternation and righteous indignation, but instead had waited to object to his client's belated deposition until trial, the scenario might have fitted the description of the situation in *United States v. Kelly*, 569 F.2d 928 (5th Cir.), *cert. denied*, 439 U.S. 829, 99 S.Ct. 105, 58 L.Ed.2d 123 (1978), in which the Fifth Circuit affirmed then District Judge Fay as follows:

### Failure to Comply with Discovery Order

The government inadvertently failed to supply appellant with a copy of a document it had decided to introduce at trial, although Ponsoldt's counsel had requested and was provided with a copy. When this oversight was brought to the government's attention, appellant's counsel was given a copy. *On counsel's objection, however, the court prohibited the government from placing the document into evidence.* We fail to see, and appellant gives no reasons, how he was prejudiced by a document which the court refused to allow the government to introduce into evidence.

569 F.2d 939 (emphasis supplied).

This court sees no reason to grant a motion for a continuance which has not even been filed, and on these facts sees no reason to trespass on Kelso's right to a speedy trial. The court sees no reason to devise a solution to the Government's self-created problem in the instant case different from the solution devised by Judge Fay in *Kelly*, which is cited by the Department of Justice itself in its *Proving Federal Crimes*, 1981, ¶ 4–12.

Kelso's demand for a trial setting pending the Government's appeal will be honored and the case tried immediately upon

conclusion of the Creekmore trial. This court does not deem its action in this regard to be a "draconian measure" as the Government would characterize it. Rather, the court deems it one required of it under the Sixth Amendment and the Speedy Trial Act.