**UNITED STATES of America**

v.

**Terry Joe TUCKER, William Johnny Mason, Lenwood Lewis White, Ray Winford Steele, Roger David Handley.**

**No. CR 84–AR–104–NE.**

United States District Court,
N.D. Alabama.

Nov. 19, 1986.

---

Robert P. Bynon, Jr., Thomas J. Spina, Birmingham, Ala., for Tucker.

Bryce Graham, Tuscumbia, Ala., for Mason and White.

Frank W. Donaldson, U.S. Atty., Bill Barnett, Asst. U.S. Atty., Craig Shaffer, Barbara Kammerman, Albert Moskowitz, U.S. Dept. of Justice, Washington, D.C., Wm. Bradford Reynolds, Asst. Atty. Gen., Dept. of Justice, Washington, D.C., Ann C. Robertson, Sp. Asst. U.S. Atty., Birmingham, Ala., for U.S.

Mark Ellis Martin, Birmingham, Ala., for Steele.

John Sudderth, Birmingham, Ala., for Handley.

## MEMORANDUM OPINION

ACKER, District Judge.

This Opinion is an addendum to the Memorandum Opinions of July 27, 1984, 591 F.Supp. 1257 (N.D.Ala.1984), July 14, 1986 and Sept. 8, 1986, 644 F.Supp. 1165 (N.D. Ala.1986), September 18, 1986, 643 F.Supp. 1067 (N.D.Ala.1986), October 17, 1986, 646 F.Supp. 843 (N.D.Ala.1986), and November 7, 1986, 646 F.Supp. 1543 (N.D.Ala.1986), all written after *United States v. Handley*, 763 F.2d 1401 (11th Cir.1985). In its previous opinions this court has found and reiterated on new evidence that Mr. Dees' "sole purpose" in prosecuting CV–80–HN–1449–S was to discover information for a federal criminal prosecution, thus forming an impermissible link between Mr. Dees' discovery efforts and the Department of Justice. This fact establishes the applicability of the principle most recently enunciated in *United States v. Tison*, 780 F.2d 1573 (11th Cir.1986), prohibiting the use of civil discovery in criminal cases. There, the Eleventh Circuit makes it clearer than it ever has been before that the prosecutor cannot use civil litigation for discovery. This principle does not involve the question of whether the discovered materials were "voluntarily" coughed up by the accused or were "compelled." That is another question, dealt with elsewhere.

In *United States v. Handley*, the Eleventh Circuit outlined the following facts appearing from the then record:

Lloyd Letson, a former Klansman, testified at a hearing on behalf of the civil plaintiffs on October 20, 1982. He had originally been a defendant, but the plaintiffs voluntarily dismissed him from the suit in return for his testimony about the alleged Klan conspiracy concerning the Decatur incident. Henry Frohsin, an assistant United States attorney, attended the hearing to represent an FBI agent who was also to testify. Frohsin obtained a transcript of Letson's testimony to send to the Justice Department in Washington. The Department reopened its investigation on December 7, 1982.

763 F.2d at 1403.

Not until November 11, 1986, did this court hear from Letson himself. On that date Letson testified for the Government at the trial of Creekmore, one of the alleged co-conspirators. It is impossible to overemphasize or to gainsay the "substantiality" of the new evidence from Letson, bearing on the issue of the connection between the Government and Mr. Dees. Not only had this court not previously heard from Letson but it has never heard from Mr. Frohsin, the Assistant United States Attorney who is featured in prior testimony and opinions. Letson testified as follows in response to cross-examination questions by Mr. Colee, counsel for Creekmore:

COLEE: Let me—let me ask you. When you came down to the U.S. Attorney's office with Mr. Dees, did you go and talk with Mr. Frohsin, as well?

LETSON: Yes, sir.

COLEE: And I believe you said Mr. Frohsin promised you immunity; that is, you wouldn't be prosecuted for what all happened out there; is that correct?

LETSON: No, Mr. Frohsin didn't say that.

COLEE: He didn't say that?

LETSON: No. Mr. Dees told me I wouldn't be prosecuted.

COLEE: I see. Mr. Dees said, "Well, I talked with Henry and he promised me that you are going to have immunity about what all happened out there"; is that correct, or words to that effect? I am not trying to quote exactly.

LETSON: No, he never did really tell me that this man—he said he wanted me to go in there and talk to this man and tell him what I had told him; that Dees told me that I didn't have anything to worry about, just tell the man the truth.

COLEE: All right.

LETSON: Now, Mr. Frohsin, he never did really come out and tell me nothing.

COLEE: Well, was it after that conversation that you had with Mr. Frohsin down here in the U.S. Attorney's office, that Mr. Dees brought you down here, was it after that that Mr. Dees told you that you were going to get immunity for anything you said about the events up there?

LETSON: Mr. Dees had told me several, several times before, before this, and he told me that I didn't have nothing to worry about. All he ever told me, I didn't have nothing to worry about, and I took it for granted that is what he meant.

COLEE: Did he tell you he had been talking with the U.S. Attorney's office and told him what you told him and that they indicated to him that they were going to give you immunity so you wouldn't worry about anything you did out there in May of 1979?

LETSON: He just told me what I told you awhile ago, that I didn't have nothing to worry about; that he just wanted me to tell these people the truth. What I had told him, in other words.

In view of this testimony, it is understandable, if not forgiveable, that the United States objected to Mr. Frohsin's being subpoenaed as a witness by defendants during the 1984 suppression hearing. It now appears that in 1984 the United States was, in effect, "taking the Fifth" in order to hide facts which would have provided the defendants here deposed by Mr. Dees a clear basis for "taking the Fifth." This constituted prosecutorial misconduct, not inconsistent with other conduct by the Government in this case. Letson's testimony not only corroborates defendant Tucker's testimony about Mr. Dees' holding out immunity in exchange for Tucker's cooperation, but for the first time the untruth of the Government's position at the 1984 suppression hearing appears. It is not true that Mr. Frohsin's exposure to Letson was simply a happy accident occasioned by Mr. Frohsin's representation of an FBI agent. The clear truth now is that as early as October 20, 1982, long before Mr. Dees took the depositions of Handley, Steele, Tucker, Mason, White and Riccio in CV–80–HN–1449–S, his civil suit ostensibly brought on behalf of the SCLC, Mr. Dees, with the tacit approval of Mr. Frohsin, promised Letson immunity. When the United States put Mr. Dees on the stand during the suppression hearing on October 3, 1986, it must not have anticipated Mr. Colee's questions to Letson on November 11, 1986, or Letson's answers. The fact that Letson, who according to his own testimony fought with the police during the Decatur incident on May 26, 1979, just as recent testimony indicated Creekmore to have done, was not indicted, and the fact that his prosecution is barred by the statute of limitations, both prove to the satisfaction of this court that the United States made good on the Dees-Frohsin promise. The totality of circumstances proves again that Dees' "sole purpose," in CV–80–HN–

1449–S, was to obtain information to feed to federal investigators and prosecutors. It also proves that an agent of the United States, Mr. Frohsin, knew what Mr. Dees was doing as early as October, 1982, and encouraged it.

The dual interview of Letson in Mr. Frohsin's office is the stuff of which an agency relationship is fashioned. Taken together with the other evidence which has come to light since *United States v. Handley,* the Letson testimony makes this addendum necessary. Letson's testimony not only devastates the position previously argued by the United States but comes after the earlier opinions. It confirms the interpretation which the court has already placed on other substantial new evidence which came to light after the remand in *United States v. Handley.* If there previously were any doubt about the two-way street connecting the Government and Mr. Dees, that doubt no longer lingers.

No orders are necessary, they already having been entered and appealed from.