**UNITED STATES of America**

v.

**Marshall Wayne MOFFETT.**

**No. CR 95–AR–32–S.**

United States District Court,
N.D. Alabama,
Southern Division.

April 20, 1995.

Rick L. Burgess, Birmingham, AL, for defendant.

Caryl Privett, U.S. Atty., Adolph J. Dean, Jr., U.S. Attorney's Office, Birmingham, AL, for the U.S.

## MEMORANDUM OPINION

ACKER, District Judge.

Marshall Wayne Moffett entered a plea of guilty to a charge of possession of counterfeit United States currency in violation of 18 U.S.C. § 472 after this court had denied Moffett's motion to suppress evidence seized without a search warrant.[1] With the approval of the court Moffett preserved his right to appeal the denial of his suppression motion. The evidence Moffett insists was unlawfully seized consists of purported one hundred dollar bills found inside a briefcase located inside commercial premises which had briefly been occupied by Moffett prior to his arrest. Moffett had been using the said premises pursuant to some sort of understanding with the owner. Whether or not Moffett was, in fact and law, a lessee, and, if so, what were the terms of the mutual agreement between owner and occupant, were among the matters in controversy at the hearing on Moffett's suppression motion. After hearing evidence and argument, the court orally denied Moffett's motion, but reserved the right to write an opinion prior to passing sentence on Moffett. This is the court's opinion.

Moffett's suppression effort was premised upon *Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961), a case in which the Supreme Court held that a landlord, simply by virtue of his position, cannot, for his tenant, consent to the warrantless search of the leased premises, and further held that evidence seized by law enforcement officers pursuant to such an inef-

1. *MOTION TO SUPPRESS EVIDENCE*

Comes now the Defendant, by and through his attorney, and moves this Court for an order suppressing from the use in evidence all items relating to and/or arising from the search and seizure of Defendant's brief case and/or Defendant's leased property and any containers therein located at 2976–E Highway 31 South, Pelham, Alabama, for the following reasons:

1. That Defendant's leased property located at 2976–E Highway 31 South, Pelham, Alabama and the briefcase contained therein were searched and items seized without the issuance of a search warrant.

2. The items seized were located within a locked brief case which was itself located within a locked business establishment leased by the Defendant.

3. That the Defendant did not consent to such search of the premises nor any containers located therein.

4. That the Defendant had not authorized anyone to consent to said premises or items located therein.

5. That the Defendant was arrested outside the premises and said premises and the briefcase located therein were not located within the immediate area of Defendant's arrest.

6. That there existed no exigent circumstances justifying the search and seizure of items located with the Defendant's business.

7. That said search and seizure of Defendant's leased premises and any containers located therein violated the Defendant's rights under the Fourth Amendment to the United States Constitution.

WHEREFORE, the Defendant respectfully requests an order suppressing from the use in evidence of any testimony or evidence relating to the search and seizure of the premises located at 2976–E Highway 31 South, Pelham, Alabama, and any containers located therein.

Attorney for Defendant

By  /s/ Rick Burgess

Rick L. Burgess

fectual purported consent is not admissible against the tenant because obtained in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures. The police officers who ultimately took possession of the counterfeit notes in Moffett's case admittedly had no search warrant. For this reason, this court, rightly or wrongly, placed the burden of proving no Fourth Amendment violation on the United States rather than on the movant.

At the evidentiary hearing conducted by this court after a preliminary consideration has been given the matter by a magistrate judge, the pertinent facts turned out to be virtually undisputed. The subject premises were part of a shopping center, owned by Robert E. Jones, who never met Moffett. It was Jones' leasing agent who dealt with Moffett. Moffett signed two separate proposed lease agreements, one using the false name, James D. Carter, as the prospective lessee, and the other using the false name, Gary Hill Moffett, as the prospective lessee. Jones, himself, never signed either of these proposed leases, and Moffett never signed any paper in his correct name. Jones did accept a month's rent from Moffett, and, through the leasing agent, did give Moffett a key to the premises. Both of the putative lease agreements contained a written addendum by which, if valid, the "lessor" was required "to put wall back between suites 'E' and 'D' at lessor's expense." After Moffett took possession of the premises, but before the contemplated improvements had been completed by the "lessor," and before Jones had signed any agreement (probably because of Jones' legitimate confusion and doubt about who was to become his tenant), Moffett was arrested and taken into custody on a fugitive warrant. When Jones heard about Moffett's arrest, Jones immediately came to the premises into which Moffett had partially moved, and which Jones found unlocked. He went in. One or two of his nearby tenants in his shopping center were already inside the Moffett premises. Jones soon found an openly visible, unlocked briefcase, which he thereupon opened and in which he found the currency ultimately determined to be counterfeit. Jones promptly called the local police, who just as promptly responded, and to whom Jones handed over what he had found.

If the crucial evidentiary question were whether Jones had the right to enter his own premises under the above-described circumstances, the question could be answered quickly and easily in the affirmative. The ambiguity in the understanding, the tentative character of the understanding, the proposed tenant's use of two names, and the overall peculiarity of the understanding between Jones and Moffett, if, indeed, there was any binding agreement between Jones and Moffett, was certainly of the sort to permit, if not to entice, Jones to enter his own premises after he learned of Moffett's arrest. However, the *dispositive* fact is not that Jones had the right to enter, but that *Jones was not an agent or representative of any law enforcement agency* when he entered, and when he took possession of the disputed evidence. Law enforcement was simply a passive recipient of incriminating evidence gathered by Jones. That evidence would be admissible against Moffett, and would not be the product of a Fourth Amendment violation, even if Jones had *not* had the legal right to enter his own commercial property, and even if Moffett's briefcase within the premises had been hidden and locked.

The Fourth Amendment only precludes *"unreasonable"* searches and seizures. Jones was not "searching" for incriminating evidence. Rather, as a curious and understandably concerned property owner he stumbled upon an unlocked briefcase, opened it, and handed over its contents to the police. If Jones' actions constituted a "seizure," it was an objectively reasonable seizure. Moffett had absolutely no expectation of privacy, insofar as Jones was concerned, under the totality of these particular circumstances, all of which were created by Moffett himself. *See generally United States v. Hall*, 47 F.3d 1091 (11th Cir.1995), and cases cited therein.

The ultimate fact is the same fact that the Eleventh Circuit found to exist when it reversed this very court in *United States v. Handley*, 763 F.2d 1401 (11th Cir.), *cert. denied*, 474 U.S. 951, 106 S.Ct. 318, 88 L.Ed.2d 301 (1985), namely, that the "impropriety in the taking of these depositions

would authorize their suppression under the fifth amendment *if and only if such conduct may be imputed to the government.* (emphasis supplied). *Handley* at 1405. Although the constitutional violation which this court, as a trial court, had found to exist in *Handley* and upon which it suppressed involuntary depositions, was a Fifth Amendment violation and not a Fourth Amendment violation, the applicable principle of law is precisely the same in *Handley* and in the instant case. In *Handley*, this court, on what it believed to be substantial evidence, had found as a fact that a lawyer for civil plaintiffs had become the agent of the government when he obtained involuntary incriminating depositions from potential criminal targets by threatening them with contempt. The undersigned was deeply impressed by the Eleventh Circuit's subsequent holding in *Handley*, because the undersigned judge was notoriously removed from the case for having committed egregious error by finding that the civil lawyer who took those suppressed depositions was the government's agent, and because the undersigned judge seemed reluctant to acknowledge his error. The Eleventh Circuit got this judge's attention like a "two-by-four" between the ears gets the attention of a mule. *See In re Acker,* 696 F.Supp. 591 (N.D.Ala.1988). This is not to say that prior to *Handley* this court was not fully aware of the longstanding principle of constitutional law that evidence, in order for its admissibility to be destroyed because it was obtained through some seeming transgression either of the Fourth Amendment or of the Fifth Amendment, must be traceable to a *governmental* actor. This court disclaims such naivete.

A Fourth Amendment case paralleling the Fifth Amendment's consideration in *Handley* is *United States v. Ramirez,* 810 F.2d 1338, 1342 (5th Cir.), *cert. denied sub nom. Alegria–Valencia v. United States,* 481 U.S. 1072, 107 S.Ct. 2469, 95 L.Ed.2d 877 (1987), which cited *Walter v. United States,* 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980), and in which the Fifth Circuit properly concluded that a hotel manager who searched luggage in a criminal defendant's room was not acting as an "instrument or agent" of the government, and therefore that there was no viola-

tion of the Fourth Amendment which would interfere with the admissibility of contraband found in the luggage.

This court is now tempted to forget the lesson it learned the hard way in *Handley* because the Eleventh Circuit on March 16, 1995, in *United States v. Hall,* 47 F.3d 1091, 1094 (11th Cir.1995), said something it could not have said in *Handley:*

> We review the district court's denial of a motion to suppress evidence as a mixed question of law and fact. *United States v. Wilson,* 894 F.2d 1245, 1254 (11th Cir. 1990). *The findings of fact are viewed under the clearly erroneous standard,* and the district court's application of the law to those facts is subject to *de novo* review. *Wilson,* 894 F.2d at 1254. *The facts are to be construed in the light most favorable to the party who prevailed below. Wilson,* 894 F.2d at 1254.

(emphasis supplied). *Wilson* and *Hall* were both decided long after this court had been removed in *Handley.* In *Handley,* therefore, the Eleventh Circuit did not give this court the benefit of the *Wilson* and *Hall* presumption as it reviewed the suppression of the depositions obtained by a lawyer as to whom this court found evidence of governmental cooperation and involvement. Nevertheless, the Eleventh Circuit's holding in *Handley,* even if it would not have occurred if *Wilson* and *Hall* had then been on the books, was and is entirely consistent with the undisputed proposition that a *private* actor who comes into possession of incriminating evidence, even if obtained in an abusive or immoral way, is perfectly free to serve it up to the prosecutor. This court has never disputed this proposition and relies upon it now. What Jones did was done simply as a private citizen. There is no way, based on the uncontroverted evidence, to make him into a government agent. Therefore, this court is saved from any possibility of repeating the "mistake" it made in *Handley.*