**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Claude H. TISON, Jr., Marcelino Echevarria and Scan Realty Services, Inc., Defendants-Appellants.**

No. 85–3527.

United States Court of Appeals, Eleventh Circuit.

Jan. 30, 1986.

Claude H. Tison, Jr., Tampa, Fla., for defendants-appellants.

Robert W. Merkle, U.S. Atty., Joseph D. Magri, Virginia M. Covington, Asst. U.S. Attys., Tampa, Fla., for plaintiff-appellee.

Before RONEY and CLARK, Circuit Judges, and FAIRCHILD [*], Senior Circuit Judge.

RONEY, Circuit Judge:

The issue in this case is whether the district court, in which a criminal prosecution is pending, has the authority under 18 U.S.C.A. § 1514 to enjoin defendants and their counsel [1] from bringing a state civil action for slander against a prospective Government witness involved in a federal criminal trial. The district court had such authority and acted within its discretion on the finding that the threatened lawsuit amounted to "harassment," and had no legitimate purpose as defined by section 1514. We affirm.

In 1982, attempting to strengthen legal protections for victims and witnesses of federal crimes, Congress enacted the Victim and Witness Protection Act of 1982, Pub.L.No. 97–291, 96 Stat. 1248.[2] In addition to the criminal sanctions of 18 U.S.C.A. §§ 1512 and 1513, relating to the intimidation of or retaliation against witnesses and informants, Congress provided the Attorney General with one more statute, § 1514 of that title, which permits the Government to obtain an injunction to prohibit harassment of a federal witness.

18 U.S.C.A. § 1514(b)(1) provides:

A United States district court, upon motion of the attorney for the Government, shall issue a protective order prohibiting harassment of a victim or witness in a Federal criminal case if the court, after a hearing, finds by a preponderance of the evidence that harassment of an identified victim or witness in a Federal criminal case exists....

The term harassment is defined by Section 1514:

(c)(1) the term "harassment" means a course of conduct directed at a specific person that—

(A) causes substantial emotional distress in such person; and.

(B) serves no legitimate purpose;

. . .

Under this statute the district court had authority to enjoin a threatened civil action if the statutory definition of harassment is satisfied. *Cf. Consumer Product Safety Corp. v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) (plain or unambiguous language in a statute is conclusive absent an expressed legislative intention to the contrary).

The central issue argued before the district court was whether the "course of conduct" of the defendants, the threat to file a defamation lawsuit in state court against a Government witness, met the test of conduct amounting to "harassment."

The facts become important to the decision. Charles F. Bean, III, a former Hillsborough County Commissioner, was issued a subpoena on February 25, 1985, commanding him to appear before a federal grand jury investigating corruption in Hillsborough County, Florida. On May 22, 1985, that federal grand jury issued a 45–count indictment in the case entitled *United States of America v. Fred Arthur Anderson, et al.*, against 30 defendants charging violations of various criminal statutes.[3] In that indictment, Marcelino Echevarria and Scan Realty Services, Inc. were charged with RICO and RICO conspiracy violations for making bribe payments to

---

[*] Honorable Thomas E. Fairchild, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

1. This is a civil proceeding separate from the criminal trial. Claude H. Tison, a defendant here, is the attorney for the criminal defendants and is not involved in the criminal case except as an attorney.

2. Section 4 of Pub.L. 97–291 resulted in the creation of what was to become 18 U.S.C.A. §§ 1512, 1513, 1514 and 1515.

3. Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.A. § 1961 *et seq.* ("RICO"), the Mail and Wire Statutes, 18 U.S.C.A. §§ 1341 and 1343, the Hobbs Act, 18 U.S.C.A. § 1951, the Travel Act, 18 U.S.C.A. § 1952, the obstruction of justice statutes, 18 U.S.C.A. § 1510; and false declarations before the federal grand jury under 18 U.S.C.A. § 1623.

public officials chargeable under state law and with violations of the mail fraud statute. The indictment alleges that in January 1980, they bribed Bean when he was a county commissioner.

One week after the indictment was delivered, Claude Tison, the attorney representing Echevarria and Scan Realty, contacted Rodney Morgan, the attorney representing Charles Bean, indicating that he wished to interview Bean "so that he could determine what the Government's evidence was against his client." Morgan informed Tison that his client would not consent to an interview. Shortly thereafter Tison sent Morgan a letter, requesting an interview. This request was similarly rejected.

On June 24, 1985, Tison called Morgan once again concerning an interview with Mr. Bean. Tison again stated that "he wished to interview my client (Bean) to determine exactly what information had been provided to the Government."

Tison expressed to Morgan concern that his client's business was adversely affected as a result of the indictment. Tison told Morgan that he believed his client had been defamed and that he had received authorization from his clients to take necessary actions regarding the matter. Morgan advised Bean that a civil defamation suit might be initiated against him. Upon hearing this information, Bean became substantially emotionally distressed.

On June 26, 1985, Morgan advised Tison that he had spoken with the U.S. Attorney's Office and discussed the filing of a suit under 18 U.S.C.A. § 1514 if Tison was going to proceed with the defamation lawsuit. Tison responded by stating that he intended to file the suit against Bean. Morgan then referred the matter to the U.S. Attorney's Office.

The complaint Tison threatened to file, on its face, accuses Bean of defaming Echevarria and Scan Realty on or about May 1, 1985, by making statements to employees of the U.S. Attorney's Office and/or the Federal Bureau of Investigation. Paragraph 5 of the complaint quotes directly from paragraph 16 of Count Two of the indictment and alleges as follows:

5. The aforesaid statement was made by defendant CHARLES FRANK BEAN, III with the intent and understanding that the statement would be re-published by its immediate audience, and such statement was in fact re-published on May 23, 1985, in the following form:

"Between in or about January, 1980 and on or about August, 1980, MARCELINO ECHEVARRIA and SCAN REALTY SERVICES, INC., corruptly offered, promised and gave Charles Frank Bean III, a public servant, a pecuniary benefit with an intent to purpose to influence the performance of an act which MARCELINO ECHEVARRIA and SCAN REALTY SERVICES, INC. believed to be, and Charles Frank Bean III represented as being within the official discretion of Charles Frank Bean III relating to Zoning Application No. 80–45; chargeable under Florida Statute Section 838.015, and an act of racketeering involving bribery as defined by Title 18, United States Code, Section 1961(1)."

After entering a temporary restraining order upon the application of the United States, the district court, after a hearing, issued a protective order on the ground that the action of the defendants amounted to harassment of a Government witness within the meaning of 18 U.S.C.A. § 1514. The court enjoined the defendants until completion of the pending criminal case, or three years, whichever is earlier, from (a) commencing any civil cause of action against Bean in the state courts of Florida, and (b) undertaking any other "course of conduct" to harass Bean.

The question is whether the filing of a state civil slander suit, that would cause a Government witness substantial emotional stress, can be held to serve no legitimate purpose, as that term is used in the statute.

The substantial emotional distress prong of the harassment test is virtually conceded. The affidavit of Bean's attorney

established that the threatened lawsuit caused substantial emotional distress to the witness. Tison stipulated at the district court hearing "that the prospect of being sued is likely to be worrisome to anybody."

█ The "no legitimate purpose" prong of the harassment test is the focal point of the argument. Defendants argue that they are in good faith in instituting the state civil action for the legitimate purpose of collecting damages. The Government, on the other hand, argues that the overriding purpose of the threatened lawsuit was an attempt to subvert the legitimate rules of procedure under the Federal Rules of Criminal Procedure. Tison wants to take Bean's deposition to find out what his testimony may be in the upcoming criminal trial. Although such discovery is permitted in a Florida state criminal case, it is not part of the Federal procedure.

There is ample evidence as outlined above to support the district court's conclusion that the threatened civil action was actually designed to help the defendants' attorney prepare his defense to the federal criminal charges.

In addition, defendants' pleadings show that the purpose of the lawsuit, or the threat, may well have been to affect Bean's criminal trial testimony. The underlying purpose of the Federal statute is to prevent harassing actions which may affect testimony in criminal trials.

Defendants' pleadings state:

It thus can hardly have come as a surprise to Mr. Morgan when he was told expressly by undersigned counsel that his clients had authorized him to institute a civil action for defamation against Mr. Bean *unless it could be established that he had not made the statements in question or if, having made them, he refused to retract them.*

(Vol. 1, 5 at 4) (Emphasis added, footnote omitted).

The Fifth Circuit Court of Appeals noted this conflict in the Federal Civil and Criminal Procedures, prior to the enactment of section 1514:

A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit. Judicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other. *Campbell v. Eastland,* 307 F.2d 478, 487 (5th Cir.1962), *cert. denied,* 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963).

The issues boil down to whether the timing of a lawsuit can deprive it of a legitimate purpose, even though in the long run it could serve such a purpose if delayed.

█ The legislative history is clear. Congress intended the criminal provisions, accompanied by the civil protective provision, to reach the threat of otherwise lawful conduct if such conduct was obstructive, or in the case of section 1514, harassing. A strong indicator of Congress' determination to strengthen existing legal protections for victims and witnesses of federal crimes can be found in its discussion of the residual clause of section 1512 which provides in pertinent part:

The obstruction of justice statute is an outgrowth of Congressional recognition of the variety of corrupt methods by which the proper administration of justice may be impeded or thwarted, a variety limited only by the imagination of the criminally inclined.

In the Committee's view, this observation leads to the conclusion that the purpose of preventing an obstruction or miscarriage of justice cannot be fully carried out by a simple enumeration of the commonly prosecuted obstruction offenses. There must also be protection against the rare type of conduct that is the product of the inventive criminal mind and which also thwarts justice.

1982 U.S.Code Cong. & Ad.News, 2515, 2524.

■ Filing a civil lawsuit to avoid the restrictions on criminal discovery and thereby obtain documents that a defendant would not ordinarily be entitled to for use in his criminal case, while at the same time attempting to intimidate a witness from providing accurate information to federal law officials is exactly the kind of harassment this legislation was designed to eliminate. *Id.*

■ The district court's decision that the threatened lawsuit was the kind of action that can be enjoined under section 1514 is consistent with other federal court decisions, which have stayed civil discovery in order to prevent defendants from circumventing the criminal discovery restrictions. *United States v. Phillips,* 580 F.Supp. 517, 520 (N.D.Ill.1984); *In re Application of Eisenberg,* 654 F.2d 1107 (5th Cir.1981); *United States v. Mellon Bank, N.A.,* 545 F.2d 869 (3d Cir.1976). Similarly, it is improper for the Government to institute a civil action to generate discovery for a criminal case. *United States v. Parrott,* 248 F.Supp. 196, 202 (D.D.C.1965).

The district court's decision meets all the statutory requirements of 18 U.S.C.A. § 1514(b), including the three-year restraint time limitation provided by § 1514(b)(4). The Defendants have been enjoined from commencing the civil action or undertaking any other "course of conduct" to harass the witness, Mr. Bean, until completion of the criminal action or three years, whichever is earlier. This time limitation does not prejudice them because they will be able to file their defamation suit in state court within the four-year statute of limitations. Fla.Stat.Ann. § 95.-11(3)(*o*).

AFFIRMED.