**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-6803

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

BRANDON MARQUIS JENNINGS, a/k/a Smilez, a/k/a Smilez Finesse, a/k/a Beezy, a/k/a Mustafa Bey,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Louise W. Flanagan, District Judge. (5:18-cr-00318-FL-1)

Submitted: April 14, 2026                        Decided: May 20, 2026

Before KING, AGEE, and THACKER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:** Richard Croutharmel, THE LAW OFFICE OF RICHARD CROUTHARMEL, Raleigh, North Carolina, for Appellant. Michael F. Easley, Jr., United States Attorney, David A. Bragdon, Assistant United States Attorney, Kristine L. Fritz, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In 2020, Brandon Marquis Jennings was convicted, following a four-day jury trial, of two counts of sex trafficking by force, fraud, or coercion; two counts of sex trafficking of a minor; manufacture and production of child pornography; interstate transportation of a minor with intent to engage in criminal sexual activity; three counts of interstate transportation for prostitution by coercion and enticement; three counts of interstate transportation for prostitution; and use of the internet to promote an unlawful business enterprise, namely prostitution, and aiding and abetting. Jennings's convictions arose from his sex trafficking of multiple victims and coercion of them to engage in prostitution. The district court sentenced him to concurrent terms of life imprisonment, and this court affirmed the judgment on direct appeal.

In 2023, the Government moved for a protective order, pursuant to 18 U.S.C. § 1514(b), to prohibit Jennings from contacting two victims who testified at his trial, one of whom was T.C., and requested an evidentiary hearing. In support of its motion, the Government included an affidavit from Department of Homeland Security Special Agent M.C. Glenn Covington, the case agent and lead investigator in Jennings's original criminal prosecution; excerpts of T.C.'s trial testimony; a screenshot of threatening text messages Jennings sent to T.C. in 2016; and Jennings's December 2021 letter to Assistant United States Attorney Blondel, the prosecutor in Jennings's criminal case.

T.C.'s testimony at Jennings's criminal trial recounted that, although she initially thought she and Jennings had a romantic relationship, he soon began prostituting her, using Backpage and Craigslist to solicit clients, and retaining her earnings. While T.C. worked

2

for Jennings, he repeatedly physically abused her, threatened to kill her and harm her children, and deprived her of food and sleep. T.C. testified that, when she attempted to leave Jennings, he beat her to the point that she lost consciousness, leaving her with bleeding in her brain and cracked ribs. She testified at trial that she was pregnant with Jennings's child at the time of the beating and that he knew she was pregnant when he assaulted her.

The Government's motion was prompted by Covington's discovery that, in 2021, Jennings began attempting to contact T.C. through various third parties via social media; the third parties said Jennings wanted to talk to T.C. and asked her for her address, phone number, and pictures of the child he and T.C. shared. As a result, T.C. drastically changed her social media activity: she deleted several accounts, stopped using certain platforms, and updated the settings on her social media accounts. T.C. was shaken by Jennings's attempts to reach out to her, and she stated that she still lives in fear that she and her children are not safe from him. In his letter to Blondel, Jennings asked her to teach him about women, and, in a postscript, he asked Blondel to coordinate with T.C. a time he could see his daughter and receive pictures of his child. The Government argued in its motion that the court should enter a protective order because Jennings's attempts to contact T.C. constituted harassment and caused her substantial emotional distress because she feared that Jennings could harm her or her family through third parties.

At the evidentiary hearing on the motion, Jennings testified that he had a legitimate purpose for contacting T.C., namely, that he wished to see the child he and T.C. shared. He stated that the only time he attempted to contact T.C. was when he sent the letter to

3

Blondel asking her to speak with T.C. so he could get pictures of his child. Jennings admitted that he never established paternity of the child, he was not aware if he was listed as the father on the birth certificate, and he never filed a motion in family court to establish his paternity. He also admitted that, after the child was born and before he was incarcerated, he did not go to family court to establish his paternity, pay child support, or seek a court order authorizing visitation or legal custody. Jennings testified that he was surprised to learn that third parties were contacting T.C. via social media asking for her information and pictures of the child around the same time he sent the letter to Blondel seeking the same information.

The district court granted the Government's motion and entered a protective order prohibiting Jennings from contacting T.C. for three years,[*] although the order included an exception that allowed Jennings to have contact with his biological child if a court authorized that contact. The district court found that the Government had established by a preponderance of the evidence that Jennings harassed T.C. within the meaning of the statute, finding that his testimony that he contacted her to see his child was not credible.

On appeal, Jennings argues that the district court abused its discretion in granting the protective order because the preponderance of the evidence did not show that his contacts with T.C. served no legitimate purpose under § 1514(b). We affirm.

---

[*] Jennings does not challenge the protective order regarding the other victim for whose benefit the court issued the order.

4

We review the grant of a protective order under 18 U.S.C. § 1514(b) for an abuse of discretion. *See United States v. Lewis*, 411 F.3d 838, 842-43 (7th Cir. 2005) (applying standard used for reviewing issuance of preliminary injunctions because protective orders are "in substance" injunctions against defendants); *cf. Roe v. Dep't of Def.*, 947 F.3d 207, 219 (4th Cir. 2020) (stating that this court reviews grants or denials of preliminary injunctions for abuse of discretion). "A district court abuses its discretion if its conclusion is guided by erroneous legal principles or rests upon a clearly erroneous factual finding." *Austin v. Experian Info. Sols., Inc.*, 148 F.4th 194, 202 (4th Cir. 2025) (internal quotation marks omitted). "A court reviewing for clear error . . . must ask whether, on the entire evidence, it is left with the definite and firm conviction that a mistake has been committed." *United States v. Ferebee*, 957 F.3d 406, 417 (4th Cir. 2020) (internal quotation marks omitted). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* (internal quotation marks omitted).

Section 1514(b)(1) authorizes district courts to issue "protective order[s] prohibiting harassment of a victim or witness in a Federal criminal case or investigation if the court, after a hearing, finds by a preponderance of the evidence that [such] harassment of an identified victim or witness" exists. 18 U.S.C. § 1514(b)(1). The statute defines harassment as a "serious act or course of conduct directed at a specific person that—(i) causes substantial emotional distress in such person; and (ii) serves no legitimate purpose." § 1514(d)(1)(B). The statute is intended to broadly protect victims and

5

witnesses, even after a criminal trial is complete. *See Lewis*, 411 F.3d at 844 (finding victim vulnerable to further harassment by defendant after his conviction and that statute does not suggest protection ceases once trial is over).

The gravamen of Jennings's argument is that his attempts to contact T.C. via third parties served a legitimate purpose because he was trying to obtain pictures of his daughter and get in contact with her. While the district court acknowledged that some evidence supported Jennings's proffered reason—namely, the third parties' and Jennings's requests for pictures of the child—it found that the preponderance of the evidence cut against a finding that Jennings had acted with a legitimate purpose. The court concluded that Jennings's demeanor on the witness stand and portions of his testimony significantly undermined his credibility. We accord considerable deference to the court's factual determinations regarding witness demeanor and credibility absent "compelling evidence to the contrary." *United States v. Locklear*, 829 F.2d 1314, 1317 (4th Cir. 1987). The court further found that Jennings's lack of involvement in the child's life when he was not incarcerated; his failure to seek legal custody, attempt to see the child, or establish paternity in the seven years after T.C. became pregnant; and his violent assault of T.C. when he knew she was pregnant with his child also cut firmly against his proffered reason. The court additionally noted that, despite Jennings's prolific pro se filings, he never once asked the court for help or requested permission to see or contact his daughter. The court thus determined that Jennings's proffered "legitimate purpose" for contacting T.C. was not credible and that his references to T.C.'s child were made to harass T.C. We discern no abuse of discretion in the court's finding.

6

To the extent Jennings argues that the district court erroneously found he had a duty to establish legal rights to see the child, he misunderstands the court's reasoning. The court did not find that Jennings had a duty to establish legal rights to see the child. Instead, it found that Jennings's failure to do so supported its finding that his proffered reason for contacting T.C. was not credible and therefore did not serve a legitimate purpose.

Jennings also argues that his failure to be involved in his child's life prior to being incarcerated does not preclude a change of heart now that he is facing several life sentences or mean that his attempt to be involved in her life now is a pretense. However, even assuming Jennings's desire to see his daughter was a reason for contacting T.C., we agree with the district court that his course of conduct served no legitimate purpose under § 1514. *Cf. United States v. Tison*, 780 F.2d 1569, 1571-72 (11th Cir. 1986) (concluding that threatened lawsuit was part of course of conduct that served no legitimate purpose under § 1514 because the lawsuit was designed to help defendants' attorney prepare a defense to federal criminal charges, avoid criminal discovery, and intimidate a witness, even though defendants argued lawsuit had "good faith" legitimate purpose to collect damages).

Here, there is ample evidence to support the district court's finding that Jennings was attempting to harass T.C. Given the court's familiarity with Jennings's underlying offense conduct, his history of manipulation and abuse of T.C., his previous threats to harm her and her children, his testimony at the evidentiary hearing that his reason for contacting her was to investigate claims for his 28 U.S.C. § 2255 motion, and the wealth of evidence against him, the district court did not abuse its discretion by finding that Jennings's

7

proffered reason for contacting T.C. did not serve a legitimate purpose under § 1514 and granting the Government's motion for a protective order.

Accordingly, we affirm the district court's entry of the protective order.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*